UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Roxanne Jackson,                                         Civil No. 08-4873 (DSD/FLN)

        Plaintiff,

        v.                                                        **REPORT AND RECOMMENDATION**

Federal Reserve Employee Benefits System,

        Defendant.

---

William J. Marshall for Plaintiff.
Noah G. Lipschultz for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 26, 2009, on Defendant's Motion to Enforce Settlement Agreement [#10]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion to Enforce Settlement Agreement [#10] be granted.

## I.     FINDINGS OF FACT

Plaintiff Roxanne Jackson is a former employee of the Federal Reserve System. (Compl. ¶ 4.) She was diagnosed with multiple disabling conditions in 1999 that resulted in her inability to work. (Compl. ¶¶ 4, 10-11.) Plaintiff participated in the Federal Reserve Office of Employee Benefits Long-Term Disability Plan, under which participants who meet the definition of "disabled" are entitled to monthly payments. (Compl. ¶¶ 7-9.) Plaintiff received disability benefits under the plan from June 27, 2000, until December 31, 2007, when benefits were discontinued. (Compl. ¶ 12.)

Plaintiff retained counsel in May 2008 to represent her in seeking reinstatement of her benefits under the disability plan. (Affidavit of Roxanne Jackson, May 15, 2009.) In November 2008, Plaintiff's counsel, William J. Marshall, initiated settlement negotiations on her behalf. (Declaration of Noah G. Lipschultz Ex. 1.) The course and outcome of these negotiations is the subject of this Report and Recommendation.

Mr. Marshall initiated settlement negotiations on November 18, 2008, via an email to counsel for Defendant. (Lipschultz Decl. Ex. 1.) In the email, Mr. Marshall stated that he obtained settlement authority from his client and also made an initial offer. *Id.* Counsel for both sides continued negotiating via email throughout January 2009 and February 2009. (Lipschultz Decl. Exs. 2-5.) On February 23, 2009, defense counsel sent an email offering to settle the case for $15,000. (Lipschultz Decl. Ex. 6.) The offer stated, " I can settle this for $15,000 - that is my authority on this one. Subject to written settlement with confidentiality, non-disparagement, release, no re-employment - all the customary terms." *Id.* Mr. Marshall responded on the same day, asking whether the Defendant's offer could be increased to $17,500. *Id.* Defense counsel responded on February 24, 2009, writing that he could not increase the $15,000 offer to $17,500. *Id.* Mr. Marshall wrote back on February 26, 2009, stating, "Deal....go ahead and draft the paperwork." *Id.* On March 6, 2009, defense counsel wrote to Mr. Marshall, asking how the $15,000 sum should be allocated between attorney and client and for tax identification numbers. (Lipschultz Decl. Ex. 7.) In the weeks that followed, counsel exchanged emails regarding a draft written agreement. (Lipschultz Decl. Exs. 7-9.) On March 30, 2009, Mr. Marshall approved the written settlement agreement drafted by defense counsel. (Lipschultz Decl. Ex. 9.) On April 7, 2009, Plaintiff met with Mr. Marshall to review the proposed written agreement. (Jackson Aff. ¶ 7.) Plaintiff asked for

a copy of the written agreement to take home for review, and upon review came to the conclusion that she did not want to settle for the lump sum payment. (*Id.* at ¶¶ 8-10.) On April 22, 2009, Plaintiff informed Mr. Marshall by telephone that she would not sign the written agreement, which Mr. Marshall communicated to defense counsel via email. (Jackson Aff. ¶ 11; Lipschultz Decl. at Ex. 10.)[1] In response, Defendant brought the instant motion to enforce the settlement agreement.

## II.     STANDARD OF REVIEW

**A.  District Courts Have The Power to Enforce Settlement Agreements**

A district court possesses the inherent power to enforce an agreement to settle a case pending on the court's docket. *Butler v. LeeAnn Chin's Cuisine*, 2008 WL 819767 at *2 (D. Minn. March 25, 2008)(quoting *Luigino's Inc. v. Societes des Produits Nestle S.A.*, 2005 WL 735919, *1 (D. Minn. Mar. 30, 2005)); *see also Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Butler*, 2008 WL 819767 at *2 (quoting *Bergstrom v. Sears, Roebuck and Co.*, 532 F.Supp. 923, 934 (D. Minn. 1982). When a motion to enforce a settlement agreement is filed while the case is still pending before the district court, the court retains jurisdiction over the case. *Butler*, 2008 WL

---

[1] On April 30, 2009, Plaintiff wrote Mr. Marshall a letter terminating his service as her attorney. (Jackson Aff. ¶16.) Plaintiff alleges that Mr. Marshall did not disclose to her exactly what was in the written settlement agreement and that he coerced her into accepting the settlement offer. (Jackson Mem. Opp. at 2-3 (Doc. No. 24.)) Mr. Marshall filed a motion to withdraw as Plaintiff's counsel, which the Court granted on the grounds that there has been an irreparable loss of communication between the Plaintiff and Mr. Marshall. (Doc. Nos. 13, X.) The Court expresses no opinion regarding what, if any, other remedies might be available to the Plaintiff regarding her complaint about her attorney's handling of the settlement negotiations. Likewise, the Court expressly makes no findings as to any of Plaintiff's allegations against her lawyer.

3

819767 at *2. Here, the case is unresolved and pending on the Court's docket. *See generally*, Docket, Case. No. 08-cv-4873. Furthermore, neither party contends that the Court lacks the power to enforce a settlement agreement. Thus, the Court retains jurisdiction over the case and is empowered to enforce a settlement agreement between the parties.

## B. Contract Principles Apply to Settlement Agreements

It is well established that settlement agreements are governed by principles of contract law. *See MLF Realty L.P. v. Rochester Ass'n*, 92 F.3d 752, 756 (8th Cir. 1996); *N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695, 697 (8th Cir. 1985)); *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971). To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a "meeting of the minds" on the material terms of the agreement. *Transclean Corp. v. Motorvac Techs., Inc.*, 2002 WL 31185886 at *8 (D. Minn. Sept. 30, 2002); *Jallen v. Agre*, 119 N.W.2d 739, 742-43 (Minn. 1963); *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997). Only those terms upon which the settlement hinges are to be considered material terms. *Goddard, Inc. v. Henry's Foods, Inc.,* 291 F.Supp.2d 1021, 1028 (D. Minn. 2003)*; see also Sheng*, 117 F.3d at 1083. The question of whether a particular term is material, "is a legal determination for the Court." *Goddard,* 291 F.Supp.2d at 1028; *Transclean*, 2002 WL 31185886 at *8.

Minnesota law requires the Court to ascertain and give effect to the intent of the parties as expressed in the language used in the settlement agreement.[2] *Barry*, 172 F.3d at 1013. Intent to contract is based upon the objective manifestations of the parties and not upon subjective, but

---

[2] The parties and the Court agree that Minnesota state law is applicable here. *See Transclean*, 2002 WL 31185886 at *3-5.

unmanifested intent. *See Horton Mfg. Co., Inc. v. Tol-O-Matic Inc.*, 973 F.2d 649, 651 (8th Cir. 1992) (applying Minnesota law). If the terms of the agreement are ambiguous, the court must determine the objective intent of the parties, which is a question of fact. *Barry*, 172 F.3d at 1013 (citing *Worthy v. McKesson Corp.,* 756 F.2d 1370, 1372 (8th Cir. 1985).) Settlement agreements that do not expressly resolve ancillary issues may, however, be enforceable. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992) (binding settlement existed when parties agreed on payment of damages, but failed to resolve property owners' demand for additional drainage). A court may enforce a settlement agreement that contemplates the execution of documents at a later time. *Jallen*, 119 N.W.2d at 743 (Minn.1963). Moreover, leaving "insubstantial matters for later negotiation . . . does not vitiate the validity of the agreement reached." *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1226 n.2 (8th Cir. 1983) (applying Minnesota law) (holding that the fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement).

### III. LEGAL ANALYSIS

**A. The Parties Formed an Enforceable Settlement Agreement**

The central issue here is whether the parties here created an enforceable settlement agreement during their course of email negotiations. For the reasons set forth below, the Court finds that the parties formed an enforceable settlement agreement under which Plaintiff agreed to dismiss her case against Defendant in return for a lump sum payment of $15,000.

i. *The Defendant Made a Valid Offer*

Contract formation requires offer and acceptance. To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a

"meeting of the minds" on the material terms of the agreement. *Transclean*, 2002 WL 31185886 at *8; *Jallen*, 119 N.W.2d at 742-43. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. Restatement (Second) of Contracts, § 24. Here, the parties conducted their settlement negotiations via email. Defense counsel made an obviously valid offer on February 23, 2009. (Lipschultz Decl. Ex. 6.) The offer stated, " I can settle this for $15,000 - that is my authority on this one. Subject to written settlement with confidentiality, non-disparagement, release, no re-employment - all the customary terms." *Id.*

    ii. *Plaintiff Accepted Defendant's Offer*

In response to the Defendant's valid offer, Plaintiff sent a February 24, 2009, email asking whether the $15,000 offer could be increased to $17,500. (Lipschultz Decl. Ex. 6.) The Defendant replied that the offer could not be increased, and the Plaintiff subsequently sent a February 26, 2009, email purporting to accept the $15,000 offer. *Id.* The only potential question here is whether the February 24, 2009, query operated as a counter-offer or a mere inquiry. It is well-settled law that a counteroffer is treated simultaneously as a rejection of the offer and as a new offer. *Alpha Venture/Vantage Props. v. Creative Carton Corp.*, 370 N.W.2d 649, 652 (Minn. Ct. App. 1985). However, a mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, are ordinarily not treated as a counteroffer. *Bauer v. American Int'l Adjustment Co.*, 389 N.W.2d 765, 768 (Minn.Ct. App. 1986) (letter not counteroffer when tone suggested it merely was last effort to obtain higher settlement and when it did not reject offer or state that more money was necessary to settle case); *see also Francisco v. Anwiler*, 1994 WL 272568, *2 (Minn. Ct. App. 1994) (quoting Restatement (Second) of Contracts §39, Cmt. b.). The

facts of the instant case are very similar to the facts in *Bauer*, in which an insurance company made a written offer, the plaintiff inquired as to whether the offer could be increased by $1,500, and the plaintiff subsequently accepted the offer before it was withdrawn. *Bauer*, 389 N.W.2d at 766-67. There, the Court found that the plaintiff's letter asking whether the insurance company would be willing to raise their settlement offer by $1,500 was a mere inquiry, not a counter-offer. *Id.* at 768. Similarly, Plaintiff's inquiry here as to whether the $15,000 offer could be increased by $2,500 was merely a request for a better offer, not a counteroffer rejecting the $15,000 offer. Importantly, the February 24, 2009, inquiry did not reject the $15,000 offer, but simply asked, "Can you get $17,500?" (Lipschultz Decl. Ex. 6.)

Further, the communications between the parties subsequent to the February 24, 2009, inquiry are strong evidence that the February 24, 2009, email was a mere inquiry, not a counteroffer. *Francisco*, 1994 WL 272568 at *2. First, Plaintiff's February 26, 2009, email accepting the $15,000 offer outwardly manifested a belief that the $15,000 offer was still open and that Plaintiff intended to accept. The email stated, "Deal...go ahead and draft the paperwork."[3] Restatement (Second) of Contracts, § 50(1) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.") It is clear that Plaintiff

---

[3] Plaintiff contends in her written memoranda in opposition to the motion to enforce settlement that she was on the prescription drug Percocet at the time of the agreement, and that the Percocet impaired her ability to make an informed judgment with respect to the settlement agreement. However, the record contains absolutely no evidence that Plaintiff was on Percocet at the time or that the Percocet impaired her ability to make an informed judgment. Plaintiff's signed affidavit states only that she "had no choice but to consider the settlement offer," that she asked for time to review the written agreement, and that she later informed Mr. Marshall that she would not sign the agreement. (Jackson Aff. ¶¶ 6-11.) Thus, based on the record, the Court finds that Plaintiff did not lack the ability to make an informed judgment with respect to the settlement.

7

believed the offer was still open for acceptance. Second, Defendant outwardly manifested a belief that the $15,000 offer had remained continuously open until the February 26, 2009, acceptance. Defense counsel wrote to Plaintiff on March 6, 2009, specifically asking how the "15K" should be allocated, and thereafter drafted a formal written settlement agreement including the $15,000 figure. (Lipschultz Decl. Exs. 7-8.) Plaintiff responded on March 9, 2009, directing that the $15,000 should be split between Plaintiff and counsel in the respective amounts of $10,000 and $5,000. *Id.* Later, after Defendant sent Plaintiff a draft written agreement, which included the $15,000 figure, Plaintiff responded with a March 30, 2009, email stating, "Looks good....." (Lipschultz Decl. Ex. 9.) Throughout their course of communication subsequent to the formation of the agreement, both parties consistently acted as though an agreement was in place. Thus, it is clear that Plaintiff's February 24, 2009, email was not a counteroffer, that Defendant's February 23, 2009, offer remained open as of February 26, 2009, and that Plaintiff's February 26, 2009, email operated to accept the offer of $15,000 in exchange for settling the case.[4]

    iii. *Material Terms*

To constitute an enforceable settlement, there must have been a "meeting of the minds" on the material terms of the agreement. *Transclean*, 2002 WL 31185886 at *8; *Jallen,* 119 N.W.2d at 742-43. Only those terms upon which the settlement hinges are to be considered material terms.

---

[4] The parties appear to concede that counsel for both sides had settlement authority in that neither party contends that counsel lacked such authority. Therefore, the Court is not required to delve into this issue and finds that counsel did indeed possess valid settlement authority. In Minnesota, attorneys have statutory authority to settle lawsuits on behalf of their clients, and parties bear a heavy burden in attempting to dislodge a negotiated settlement by claiming lack of settlement authority in their attorney. Minn. Stat. § 481.08; *see Rosenberg v. Townsend, Rosenberg & Young, Inc.,* 376 N.W.2d 434, 437 (Minn.Ct. App. 1990); *see also Luigino's*, 2005 WL 735919 at *1(applying Minnesota law).

*Goddard,* 291 F.Supp.2d at 1028*; see also Sheng*, 117 F.3d at 1083. The question of whether a particular term is material, "is a legal determination for the Court." *Goddard,* 291 F.Supp.2d at 1028; *Transclean*, 2002 WL 31185886 at *8. Here, the settlement hinges upon the exchange of money in return for settling the case. Thus, the material terms consist of the following: 1) Defendant will pay Plaintiff $15,000, and 2) Plaintiff will dismiss her case against Defendant.

### a. Plans for Later Writing Do Not Affect the Creation of an Agreement on Material Terms

The fact that the parties planned to reduce their agreement to writing, after agreeing to settle the case for $15,000, does not negate the agreement on material terms. A court may enforce a settlement agreement that contemplates the execution of documents at a later time, leaves insubstantial matters for later negotiation and/or that does not expressly resolve ancillary issues. *Jallen*, 119 N.W.2d at 743 ; *Trnka*, 709 F.2d at 1226, n.2 ; *Triple B & G*, 494 N.W.2d at 53. Here, the parties' emails show that they expressly contemplated the subsequent execution of a detailed written agreement. The February 23, 2009, offer stated, "I can settle this for $15,000 - that is my authority on this one. Subject to written settlement with confidentiality, non-disparagement, release, no re-employment - all the customary terms." *Id.* The February 26, 2009, acceptance stated, "Deal...go ahead and draft the paperwork." The record shows that the settlement hinged on a simple trade – the Plaintiff would drop the case against the Defendant in return for a payment of $15,000. All the "customary terms" were to be worked out later and memorialized in writing. These additional terms, which included confidentiality, non-disparagement, release, no re-employment, etc., are ancillary to the central agreement and are therefore not "material terms" within the meaning of Minnesota contract law. The additional terms are vague terms that the parties clearly anticipated fleshing out in a written agreement, and which were indeed fleshed out in the draft written

9

agreement. Plaintiff argues that she was inadequately informed of the contents of the eight-page written agreement and therefore cannot be bound by the written agreement. The Court agrees – Plaintiff is bound only by the material terms of the agreement formed on February 26, 2009, requiring Defendant to pay Plaintiff $15,000 in return for a dismissal of the case. Any subsequent writings of the parties, including email exchanges and the draft written agreement, are insubstantial ancillary matters that are not part of the binding settlement agreement. Therefore, the fact that Plaintiff may have been inadequately informed of the content of the draft written agreement is irrelevant. Under Minnesota law, which favors the settlement of disputes, a Court may enforce a settlement agreement that contemplates the execution of a later written agreement. *Butler*, 2008 WL 819767 at *2. As discussed above, the settlement agreement here falls squarely into this category and must be enforced.

### B. Conclusion

A settlement agreement exists between the parties. The binding agreement was formed on February 26, 2009, and consists of the following material terms: a promise by the Defendant to pay Plaintiff $15,000 and a corresponding promise by the Plaintiff to dismiss her case against the Defendant. The settlement was not contingent upon formal execution of a written agreement, and all writings and representations subsequent to the February 26, 2009, acceptance are not part of the settlement agreement. The parties shall comply with the terms of their agreement as soon as practicable.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Enforce Settlement Agreement [#10] be **GRANTED** to the extent set forth herein.


DATED: June 19, 2009                                             *s/ Franklin L.  Noel*
                                                                 FRANKLIN L. NOEL
                                                                 United States Magistrate Judge



Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 9, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 9, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.